***E-FILED - 6/29/10***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD GARY HALL, JR., | ) | No. C 07-3233 RMW (PR) |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| vs. | ) ) | |
| JAMES TILTON, et al., | ) ) | |
| Defendants. | ) ) | |

Plaintiff, a California prisoner, filed this pro se civil rights action under 42 U.S.C. § 1983. The court ordered service of plaintiff's second amended complaint. Per order filed on October 16, 2008, the court found that, when liberally construed, plaintiff alleged that he was improperly transferred and placed into Level III housing while classified as a Level II inmate and when he attempted to dispute his housing, prison officials retaliated against him. The court concluded that plaintiff stated cognizable claims of retaliation and cruel and unusual punishment, as well as claims of a violation of due process and equal protection.[1]

Defendants move to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) on

---

[1] The court notes that plaintiff alleges the Order of Service misconstrued his claims. Plaintiff clarifies what his intended claims are. The court's misinterpretation of plaintiff's claims does not affect its ruling on defendants' motion to dismiss the complaint as untimely.

the ground that the claims are time-barred. Plaintiff filed an opposition, and an amended opposition. Defendants filed a reply to the original opposition and the amended opposition.[2] For the reasons stated below, the court GRANTS defendants' motion to dismiss.

## BACKGROUND

On October 4, 1994, plaintiff was classified as a Level II prisoner by the Classification Staff Representative and ordered transferred from a Level III state prison to the Correctional Training Facility ("CTF"), which was a Level II state prison. (Complaint at 1.) In 2000, several sections of CTF were reclassified from a security level two to a security level three. (Id., Ex. B.) On November 2, 2001, plaintiff appeared before the CTF-North Facility Unit Classification Committee for his annual hearing and was told he was still classified and housed at a Level II facility. (Complaint at 2, Exs. E, I.)

Beginning in May 2002, prison staff attempted to move plaintiff from CTF-North to CTF Central because CTF-North Facility B Yard was being converted from Level II to Level III in order to accommodate the growing number of Level III inmates, however, plaintiff refused to move. (Complaint at 2, Ex. F.) In June 2002, prison staff again attempted to move plaintiff to move to CTF-Central because the North B Yard was being converted and the staff needed to move all the Level II inmates to a Level II housing unit. (Complaint at 2, Ex. H.) Again, plaintiff refused.

On October 25, 2002, Associate Warden Cohen distributed a memorandum ("mini-memo") to inmates housed at CTF-North, outlining the security housing designations of CTF-North Facility. (Complaint, Ex. M at 45.) In the mini-memo, Cohen states that in 2000, CTF-North was re-designated as a Level III facility in all areas except the dorms, which remained a

---

[2] On December 8, 2009, plaintiff filed his opposition to defendants' motion. On December 21, 2009, defendants filed their reply. On December 22, 2009, plaintiff filed a motion to amend his opposition. On February 9, 2010, the court granted plaintiff's motion to amend. On February 24, 2010, defendants filed a reply to the "amended opposition." On March 2, 2010, plaintiff filed his amended opposition. Plaintiff also filed a motion requesting the court to deny defendants' reply to his unfiled amended opposition. A review of defendants' December 21 and February 24 replies reveals no substantially different arguments. Thus, the court concludes that acceptance of defendants' February 24 reply would not prejudice plaintiff. The court takes note of plaintiff's objection and denies plaintiff's motion to disregard defendants' February 24 reply.

Order Granting Defendants' Motion to Dismiss
P:\PRO-SE\SJ.Rmw\CR.07\Hall233mtdsol.wpd     2

1 Level II designation.  (Id.)  Cohen explains that for Level II inmates, "lifer inmates are to be
2 housed in the North Dorm.  Lifer inmates currently housed in a Cell environment will be
3 required to move to North dorm or CTF Central Facility upon bed availability."  (Id.)
4       On October 26, 2004, plaintiff appeared at a unit classification hearing in which he was
5 "put on notice" that he was housed in a Level III facility as a Level II inmate.  In April 2005,
6 Jeanne Woodford, the Director of the California Department of Corrections allegedly visited
7 CTF-North Facility and was surprised to learn that Level I, II, and III prisoners were being
8 housed together. (Complaint at 10-11.)  On April 17, 2005, plaintiff filed an inmate grievance
9 appeal challenging his "unlawful" retention at a Level III housing unit while he was a Level II
10 inmate for over four years.  (Complaint, Ex. O.)  Specifically, plaintiff argued that he was
11 unlawfully housed in a Level III facility with Level III inmates without a classification hearing
12 or CSR endorsement, and was subject to more restrictive atmosphere.  (Complaint at A, Ex. O.)
13 After exhausting his administrative appeal, plaintiff filed the underlying federal civil rights
14 action.

## ANALYSIS

16       Section 1983 does not contain its own limitations period.  The appropriate period is that
17 of the forum state's statute of limitations for personal injury torts.  See Wilson v. Garcia, 471
18 U.S. 261, 276 (1985); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).  In California, the
19 current version of the general residual statute of limitations for personal injury actions is the two-
20 year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in
21 § 1983 actions.  See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).  This version
22 became effective on January 1, 2003.  Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir.
23 2007).  "[A]ny cause of action that was more than one-year old as of January 1, 2003 would be
24 barred under the previous one-year statute of limitations."  Id. at 1133.
25       Federal law determines when a cause of action accrues and the statute of limitations
26 begins to run in a § 1983 action.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  Under federal law,
27 a claim generally accrues "when the plaintiff knows or has reason to know of the injury which is
28 the basis of the action."  TwoRivers, 174 F.3d at 991-92.

Order Granting Defendants' Motion to Dismiss
P:\PRO-SE\SJ.Rmw\CR.07\Hall233mtdsol.wpd     3

1  The parties dispute when plaintiff's housing claims arose.[3]  Defendants argue that plaintiff's claims are untimely because the causes of action accrued in 2000, or at the very latest, October 25, 2002, the date Cohen distributed his mini-memo.  Plaintiff disputes this and contends that at least through January 2003, he was assured that he was housed in a Level II facility as a Level II inmate and it wasn't until October 26, 2004, when he was "officially put on notice that he was in fact housed at a Level III housing facility (CTF-III) as a Level II inmate." (Am. Opp. at 11-12.)

Unfortunately for plaintiff, his housing claims are time-barred because he did not submit his federal complaint to prison officials for filing until June 14, 2007, more than three years after his claims accrued, which occurred at the latest, on October 25, 2002.  Plaintiff's contention that his claims accrued at the earliest on October 26, 2004 is unavailing.

Accrual ultimately depends on the substantive basis of the claim.  See, e.g., Lukovsky v. San Francisco, 535 F.3d 1044, 1049 (9th Cir. 2008) (employment discrimination claim accrues upon awareness of the actual injury, i.e. the adverse employment action, not when plaintiff suspects a legal wrong, i.e. that the action was discriminatory); Canatella v. Van De Kamp, 486 F.3d 1128, 1133 (9th Cir. 2007) (applying single publication rule to internet website posting of the summary of plaintiff's disciplinary action and holding that claim arose when the offensive summary first appeared in printed California Bar Journal because that publication informed - or should have informed - plaintiff that summary also appeared on website).  Regardless of whether plaintiff considered Cohen's mini-memo to be an "official" notification that CTF-North had been redesignated a Level III facility from a Level II facility in 2000, the mini-memo gave plaintiff reason to be aware of his alleged injury.  See TwoRivers, 174 F.3d at 991-92.

To determine the timeliness of plaintiff's claims, he must allege discrete acts that would violate the Constitution that occurred within the limitations period.  See RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002).  In RK Ventures, Inc., appellants filed a

---

[3] On March 4, 2010, plaintiff moved to voluntarily withdraw his claim of retaliation. The court grants his motion.  Accordingly, the court will not determine whether the retaliation claim is barred by the statute of limitations.

Case 5:07-cv-03233-RMW   Document 130   Filed 06/29/10   Page 5 of 7

civil rights action alleging that the appellees unlawfully commenced a nuisance abatement proceeding against them. In assessing whether such claims were time-barred, the Ninth Circuit directed that courts should look at when the operative decision occurred and should separate from those decisions the inevitable consequences. Id. The Ninth Circuit determined that the action accrued when the city decided to institute proceedings and the police chief sent a letter to appellants giving notice of the abatement of the nuisance. Id. "The continued prosecution of the action within the limitations period was the inevitable consequence of the initiation of the abatement proceedings." Id. "The actual beginning of the abatement hearing . . . was simply the effect of [the decision to institute formal abatement hearings] and was not a separately unconstitutional act." Id. Thus, the question, for purposes of determining the timeliness of claims then, is when the operative decision is made rather than when it was carried out. See id. at 1059; Chardon v. Fernandez, 454 U.S. 6, 7 (1981) (per curiam) (noting that the focus is on the date of the alleged illegal act rather than the point at which the consequences of the act were realized).

Here, a review of the record demonstrates that in 2000, CTF-North was redesignated from Level II security facility to a Level III security facility. (Complaint, Ex. B.) On May 16, 2002, plaintiff was told that he was moving to a CTF-Central from CTF-North and plaintiff refused to move. (Complaint, Ex. F.) Plaintiff stated that did not care about the Level III inmates. As a result, plaintiff pleaded guilty to a rules violation report. (Id.) In that report, the reporting employee stated, "Due to a mission change at CTF-North Facility 'B' Yard involving the conversion from a Level II Yard to a Level III Yard, Level II lifers are being moved from North Facility to Central Facility." (Id.) On June 26, 2002, plaintiff was ordered to move to CTF-Central. (Complaint, Ex. H.) Plaintiff stated he did not want to go. In the resulting Rules Violation Report, the reporting employee stated, "Due to a mission change at CTF-North 'B' Yard involving the conversion from a Level II to a Level III yard, all inmates are being moved from Whitney Hall cell living to a Level II housing unit to accommodate the arrival of Level III inmates." (Id.) Plaintiff again pleaded guilty and stated that he did not want to move to CTF-Central. (Id.)

In a mini-memo address to the inmates dated October 25, 2002, Associate Warden Cohen detailed the conversion of CTF-North facility housing.  (Complaint, Ex. M.)  In the mini-memo, Cohen expressed his recognition that "there is a great deal of confusion concerning inmate-housing designations at North Facility."  (Id.)  "As you know in the year 2000, *North facility was re-designated a level III facility* based on a projected increase of Level III inmates throughout the prison system."  (Id.) (Emphasis added.)  The mini-memo further stated that although the conversion process has been slower than anticipated, prison staff were going to expend a "renewed effort" to complete the conversion process.  (Id.)  Even giving plaintiff the benefit of the doubt that the May and June 2002 attempts to move him were not reason enough to make him aware of his alleged injury, when plaintiff learned of the contents of the mini-memo, he became aware -- or should have been aware -- that he was a Level II inmate being housed in a Level III facility.  See, e.g., Lukovsky, 535 F.3d at 1050-51 (reinforcing in an employment discrimination case that a cause of action accrues plaintiff when becomes aware of the adverse decision and not when plaintiff recognizes the consequences of the action).

Thus, the court concludes that plaintiff's cause of action accrued, at the latest, on October 25, 2002, the date of the mini-memo.  Plaintiff's complaint then was due one-year later, on October 25, 2003.  However, plaintiff, who is serving a "term of less than for life," is also entitled to tolling.  CAL. CIV. PROC. CODE § 352.1(a).  The tolling is not indefinite, however; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  Id.  A California prisoner serving a life sentence with the possibility of parole, such as plaintiff, is imprisoned for a term of less than life and therefore is entitled to tolling under section 352.1(a) and has three years to bring a § 1983 claim for damages.  See Martinez v. Gomez, 137 F.3d 1124, 1125-26 (9th Cir. 1998).  Therefore, plaintiff's statute of limitations expired on October 25, 2005, more than one and a half years before plaintiff filed his federal complaint in this case.  Accordingly, the court GRANTS defendants' motion to dismiss the case as untimely.

Alternatively, now that plaintiff has clarified his housing claims in his amended opposition and related pleadings, the court DISMISSES plaintiff's second amended complaint for failure to state a claim.  Even if plaintiff's claims were timely, it appears that they are not

1  cognizable. See Myron v. Landsberger, 476 F.3d 716, 718-19 (9th Cir. 2007).

2  Plaintiff contends that he has been improperly housed at a Level III institution and
3  alleges various errors and failures to comply with regulations in the classification process.  He
4  claims that his retention in a Level III facility as a Level II inmate violated his right to be free
5  from cruel and unusual punishment.  However, misclassification does not inflict pain so as to be
6  cruel and unusual punishment violative of the Eighth Amendment.  See id. at 719.  Plaintiff also
7  asserts that the alleged wrongful housing resulted in due process violations.  However, this also
8  does not state a Fourteenth Amendment claim.  See Olim v. Wakinekona, 461 U.S. 238, 249
9  (1983) (inmates have no due process liberty interest in prison transfers).  Plaintiff has not
10 demonstrated how the conditions at a Level III facility significantly differ from a Level II
11 facility, or alleged that the classification will affect the duration of plaintiff's sentence.  See
12 Myron, 476 F.3d at 718.  Thus plaintiff's housing at a Level III facility does not present an
13 "atypical and significant hardship" such that it created a liberty interest.  See id.  Accordingly,
14 the court DISMISSES plaintiff's second amended complaint for failure to state a claim.

## CONCLUSION

16 Plaintiff's motion for voluntary withdrawal of his relation claim is GRANTED.  (Docket
17 No. 125.)  Defendants' motion to dismiss as untimely is GRANTED.  (Docket No. 96.)  All
18 remaining motions are DENIED as moot.

19 The Clerk shall enter judgment and close the file.

20 IT IS SO ORDERED.

21 DATED:  6/29/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge